**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZACHARY GALICKI, et al.,<br>Plaintiffs,<br>v.<br>STATE OF NEW JERSEY,<br>Defendants. | Civil Action No. 14-169 (JLL)<br><br>**OPINION** |

| | |
|---|---|
| GW CAR SERVICE, LLC, et al.,<br>Plaintiffs,<br>v.<br>STATE OF NEW JERSEY, et al.,<br>Defendants. | |

**LINARES, District Judge.**

This matter comes before the Court by way of Motions to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint filed by Michael Drewniak, State of New Jersey, Bill Stepien, the Port Authority of New York & New Jersey, Chris Christie for Governor, Inc., and Bill Baroni (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Entry Nos. 84, 86, 87, 88, 89].[1] The Court has considered the parties'

[1] Also before the Court is a Motion by the State of New Jersey and Michael Drewniak to deny class certification which the Court will deny as premature at this time [Docket Entry No. 85].

submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' Motions to Dismiss are granted.

## I. BACKGROUND[2]

Plaintiffs have filed a proposed Class Action Complaint asserting numerous claims sounding in tort and civil rights violations as against the State of New Jersey, Chris Christie for Governor, Inc. ("CCFG"), the Port Authority of New York and New Jersey ("the Port Authority"), Bridget Anne Kelly, Michael Drewniak, David Wildstein, Bill Baroni, Bill Stepien, as well as fictitious, and as yet unknown, individuals and corporations. [Consolidated Class Action Amended Complaint ("CAC"), at 1-21.] Plaintiffs' claims, brought on behalf of a putative class,[3] arise out of the closure of multiple lanes of traffic to the George Washington Bridge from September 9, 2013 through September 13, 2013. [*Id.*]

On January 9, 2014, Zachary Galicki, Joy Galicki, Eli Galicki, Robert Arnold, Kim Joscelyn, Elizabeth Psaltos, Madeline Lobue, Hone Lee, Mark Katz, Liberty News, Inc., Dog On It Doggie Daycare, Apple Corrugated Box Ltd., and Secaucus Limo Car Service LLP

---

Defendants are invited to renew their motion after Plaintiffs have filed an amended complaint and discovery has proceeded.

[2] The following facts are accepted as true solely for the purposes of this motion.

[3] Plaintiffs propose to represent a class consisting of "all persons who are [United States] residents . . . who were forced to suffer extreme traffic delays and to be stuck in their cars, waste gas, and lose time from September 9, 2013 through September 13, 2013, when they traveled in or around the Borough of Fort Lee, New Jersey and neighboring towns and/or when they attempted to cross the [GWB]." [CAC, ¶ 50.] Plaintiffs also propose to represent two "subclasses," one consisting of "class members who drove their cars in New Jersey, were stuck in extreme traffic and delays in New Jersey, and paid a toll for the [GWB] from September 9, 2013 through September 13, 2013," and a second comprising "class members who were traveling and/or driving solely in New Jersey from September 9, 2013 through September 13, 2013, and were stuck in extreme traffic and delays in New Jersey." [*Id.* at 51-52.]

(collectively "Galicki Plaintiffs"), filed a Complaint against the State of New Jersey; Governor Christie; Bridget Anne Kelly, a former employee of the Governor's Office; the Port Authority; former Port Authority employees Bill Baroni and David Wildstein and various other ABC Corporations and John Does (collectively, "Galicki Defendants"), alleging violations of federal law and New Jersey common law claims. [Docket Entry No. 1].

On or about January 13, 2014, Plaintiffs GW Car Service, LLC, Lime Taxi, LLC, Palisades Enterprises, LLC, Fort Lee Car Service LLC, Vans R Us, Bergen Transportation Services, Inc., Robert Cohen, Joan Cohen and Victor Cataldo ("GW Car Service Plaintiffs") filed a Complaint in the Superior Court of New Jersey, Bergen County against the State of New Jersey; Governor Christie's reelection campaign, Chris Christie for Governor, Inc.; David Wildstein; Bill Baroni; Bridget Kelly; Michael Drewniak, a current employee of the Governor's Office; and Bill Stepien, a former employee of the Governor's reelection campaign (collectively, "GW Car Service Defendants"). [Civil Action No. 14-1319 (WHW), Docket Entry No. 1]. On February 28, 2014, Defendants the State of New Jersey and Mr. Drewniak (collectively "State Defendants") removed that matter to this Court. [*Id.*]

On March 24, 2014, the Galicki Plaintiffs filed a Motion to Consolidate this matter with GW Car Service and to file a First Consolidated Amended Complaint. [Docket Entry No. 39]. On August 18, 2014, the Court granted the Galicki Plaintiffs' Motion to Consolidate. [Docket Entry Nos. 57 & 58].

On November 14, 2014, Plaintiffs filed a Motion for Leave to file a Consolidated Class Action Amended Complaint, which the Court subsequently granted. [Docket Entry Nos. 69 & 70]. On December 19, 2014, Plaintiffs filed the instant CAC. [Docket Entry No. 71]. The CAC removed Governor Christie as a defendant and dropped the Galicki Plaintiffs as named plaintiffs.

[CAC at 1-21]. The CAC alleges claims for deprivations of Plaintiffs' federal constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1986, "vicarious liability and/or governmental responsibility;" attorney's fees and costs under 42 U.S.C. § 1988; violations of New Jersey's RICO statute; violations of Plaintiffs' New Jersey Constitutional Rights under the New Jersey Civil Rights Act; common law civil conspiracy; consumer fraud; breach of contract; and respondeat superior against the State of New Jersey, the Port Authority, and CCFG, for the actions of their agents, employees and servants. [*Id.* at 1-21].

Currently before the Court are Motions to Dismiss Plaintiffs' CAC pursuant to Rule 12(b)(6) by Defendants State of New Jersey, Michael Drewniak, Bill Baroni, Bill Stepien, CCFG, and the Port Authority. [Docket Entry Nos. 84, 86, 87, 88, 89].

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged

in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. DISCUSSION

Defendants' Motions to Dismiss the CAC will be granted and Plaintiffs will be given the opportunity to amend most of their claims. The CAC as it stands now does not satisfy the mandate of Fed. R. Civ. P. 8(a). The Court begins its discussion by noting an overarching defect in Plaintiffs' claims against all Defendants—namely, the lack of any substantive facts concerning each Defendant's role in the context of the closures and redirection of tollbooth lanes at the entrance to the GWB from September 9 through September 13, 2013. The CAC, as currently pled, fails to provide Defendants with adequate notice of the particular nature of the claims being asserted against them. The Court has carefully read through the CAC and finds that nearly every reference to all Defendants is conclusory and made in the context of a formulaic recitation of the elements of Plaintiffs' various claims. Despite the multitude of media coverage and governmental scrutiny about the facts and circumstances related to the incident giving rise to this action, Plaintiffs provide only conclusory allegations against Defendants as a group, failing to allege the personal involvement of any Defendant as is required. *See Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants). For example, the CAC lacks any meaningful facts which establish each individual Defendant's liability for the misconduct alleged. Such vague and conclusory allegations of unlawful conduct do not satisfy the plausibility standard with respect to any of the claims asserted against Defendants. *See Iqbal*, 556 U.S. at 678.

**A. Count One – Violation of 42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, to establish a cause of action under § 1983, a plaintiff must demonstrate that: (1) there was a violation of a right secured by the Constitution and laws of the United States, and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Plaintiffs allege in their CAC that:

> 60. From September 9, 2013, through September 13, 2103, plaintiffs and members of the plaintiff class were lawfully driving and/or travelling on or near the roads located in the Borough of Fort Lee.
>
> 61. During said time and in the months preceding said time period, defendants while acting under the color of state law, improperly, illegally, and without authority conspired to close roads of travel, toll plazas, toll booths, and access to the George Washington Bridge from the Borough of Fort Lee to impose punishment against political opponents.
>
> 62. Said actions and misconduct constitutes a violation of the 5th and 14th Amendments to the Constitution of the United States of America as defendants caused the plaintiffs and members of the plaintiffs class to be deprived of life, liberty, pursuit of happiness without due process of law as they were trapped in their cars and forced to lose time that cannot be reclaimed, to lose money, to be denied their privileges and/or immunities of interstate and local travel, to be falsely restrained and/or imprisoned, to be denied the equal protection of the laws as other citizens and travelers did not have to face such extreme delays and congestion, and to suffer emotional damages.

1. Rule 8(a)

Defendants move to dismiss Count One of Plaintiffs' CAC on the grounds that the § 1983 claim alleged against them fails to state a claim because all of the allegations contained in the CAC are conclusory and lack the factual detail required to state a cognizable claim against Defendants. For the reasons set forth above, the Court agrees with Defendants and finds that Plaintiffs fail to differentiate their § 1983 claims against the various Defendants, which includes a not-for-profit, two governmental entities and several individuals, with respect to their alleged wrongdoing. Instead, Plaintiffs simply lump all Defendants together, failing to put Defendants on notice of their own alleged wrongdoing. Additionally, Plaintiffs' allegations are conclusory, stating nothing more than certain legal terms in an effort to plead their claim, *e.g.*, "negligently," "recklessly," "conspired" and "planned." Accordingly, Plaintiffs' Count One of the CAC is dismissed *without prejudice*.

2. State Action

Defendants, the State of New Jersey, Michael Drewniak, CCFG and Bill Stepien, argue that they are not subject to liability under § 1983 either because they are not "persons" within the meaning of § 1983 (the State of New Jersey and Michael Drewniak), *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989), or because they are not state actors (CCFG and Bill Stepien).

Plaintiffs concede that the State of New Jersey is not a "person" and therefore not subject to suit under this section. However, while Plaintiffs concede that Michael Drewniak is not a "person" in his official capacity and therefore not subject to suit under this section, they argue that they are suing him in his individual capacity. Because Plaintiffs are being given leave to amend their § 1983 claims, any amendment should clarify that Michael Drewniak is being sued

in his individual capacity, as well as set forth his personal involvement, in their Amended Class Action Complaint. Accordingly, Plaintiffs' § 1983 claim against the State of New Jersey is dismissed *with prejudice*.

With respect to the Motions to Dismiss Plaintiffs' § 1983 claims filed by CCFG and Bill Stepien, they argue that because they are not state actors within the meaning of § 1983, to be held liable pursuant to § 1983, there must be factual allegations which establish that they conspired with state actors to deprive Plaintiffs of their constitutional rights and that any such allegation is pled insufficiently. *See Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (section 1983 "[l]iability would only attach if a private party conspired with a state actor."). As the Court has already stated, Plaintiffs' § 1983 allegations are merely conclusory and have not been supported sufficiently by factual allegations. The same is true of any allegation of a conspiracy between CCFG and Bill Stepien and the state actors. The sum total of Plaintiffs' allegation is that "defendants . . . conspired." For these reasons, Plaintiffs will be permitted leave to amend their § 1983 claim.

3. <u>Substantive Constitutional Violations</u>

Because Plaintiffs will be permitted leave to amend their § 1983 claim, the Court notes that Plaintiffs' substantive allegations regarding the constitutional rights of which they have been deprived are deficient for the same reasons, *i.e.*, Plaintiffs' allegations are conclusory, suffer from "collectivized" pleading, fail to allege the requisite elements of each claim as to each defendant, and fail to put each individual defendant on notice of the particular allegations alleged against that defendant. By way of example, the Court notes that Plaintiffs' Equal Protection claim fails as Plaintiffs have failed to allege any facts whatsoever which would demonstrate that Plaintiffs were subjected to different treatment than those similarly situated. Accordingly,

Defendants' Motions to Dismiss Plaintiffs' § 1983 claim are granted. Plaintiffs will be permitted to amend their § 1983 claim as against all Defendants but the State of New Jersey.

**B. Count Two – Violation of 42 U.S.C. § 1985**

Section 1985(3) prohibits conspiracies directed at "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). "To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted). "Thus, § 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has explained:

> This independent existence is necessary to preserve the distinction between two of the requirements of a § 1985(3) claim: that the conspirators be motivated by class-based invidiously discriminatory animus and that the plaintiff be the victim of an injury he or she seeks to remedy by means of § 1985(3). If merely alleging the latter could satisfy the former, "the requirement of class-based animus would be drained of all meaningful content," and would transform § 1985(3) into the "general federal tort law" Congress did not intend to enact.

*Id.* at 136; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("Whatever may be the precise meaning of a 'class' for purposes of Griffin's speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a

group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.”).

Plaintiffs’ CAC fails to allege, with sufficient factual support, Plaintiffs’ membership in a class of individuals who have been subjected to “historically pervasive discrimination.” *See Magnum v. Archdiocese of Philadelphia*, 253 Fed. App’x. 224, 230 (3d Cir. 2007) (noting that “§ 1985 protects ‘victims of historically pervasive discrimination’ and those with ‘immutable characteristics’”) (quoting *Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3d Cir. 1979)). Nor does the CAC properly allege any class-based invidious discriminatory animus by any of the Defendants. *See*, *e.g.*, *Farber*, 440 F.3d at 136 (“In order to ensure that a § 1985(3) class has an independent identifiable existence, a reasonable person must be able to ‘readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not.’ For example, ‘women,’ or ‘registered Republicans,’ may constitute an identifiable ‘class’ as opposed to a more amorphous group defined by ‘conduct that the § 1985(3) defendant disfavors,’ such as ‘women seeking abortion,’ or ‘persons who support [political] candidates’”). Having failed to allege, *inter alia*, membership in a group that has been subjected to “historically pervasive discrimination” or any facts even suggesting that Defendants were motivated by class-based invidious discriminatory animus, Plaintiffs have failed to state a viable § 1985(3) claim. *See*, *e.g.*, *Coles v. Carlini*, No. 10–6132, 2012 WL 1079446, at *14 (D.N.J. March 29, 2012) (dismissing § 1985(3) claim after finding that “invidious class-based discrimination is not at issue and there are no allegations involving a protected class.”). This claim is therefore dismissed *with* prejudice.

**C. Count Three – Violation of 42 U.S.C. § 1986**

Violations of 42 U.S.C. § 1986 by definition depend on a pre-existing violation of § 1985. 42 U.S.C. § 1986. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994). Since a § 1985 claim has not been, and cannot be, properly alleged, a § 1986 claim likewise does not exist. Accordingly, Plaintiffs' § 1986 claims against Defendants are dismissed *with* prejudice.

**D. Count Four – Vicarious Liability/Governmental Responsibility**

In Count Four of the CAC, Plaintiffs bring a claim against Defendants New Jersey, the Port Authority and CCFG for vicarious liability or governmental responsibility, alleging they are responsible for the actions of their agents, employees and servants. However, in their opposition brief, Plaintiffs appear to be pressing this claim solely against the Port Authority for the actions of its employees, Bill Baroni and David Wildstein.

While a governmental entity may not be held liable under a theory of respondeat superior liability for a violation of § 1983 solely because it is the employer of an alleged wrongdoer, *see Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), a governmental entity may be held liable where "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). A governmental entity's failure to properly train or supervise its employees can amount to a "custom" that will trigger § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A governmental entity may also be held responsible for a single decision made by an employee of the governmental entity where that employee had "final policymaking authority." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).

The Court has already determined that Plaintiffs' § 1983 claim is deficient as pled. In the absence of a valid § 1983 claim, there can be no respondeat superior liability. The Court notes, however, that had the § 1983 claim proceeded at this time, this claim would nonetheless be subject to dismissal as it merely recites the legal standard via conclusory allegations and provides no facts to substantiate such a claim. Therefore, Plaintiffs will be permitted leave to amend its claim as to the Port Authority only, as they have abandoned their claims against Defendants the State of New Jersey and CCFG. Accordingly, Count Four of Plaintiffs' CAC is dismissed *with prejudice* as to the State of New Jersey and CCFG, and *without prejudice* as to the Port Authority.

**E. Count Five – Violation of 42 U.S.C. § 1988**

Plaintiffs assert a cause of action under § 1988, seeking attorney's fees. Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [various civil rights laws], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…." 42 U.S.C. § 1988. However, § 1988 does not create an independent cause of action. *See Moor v. County of Alameda*, 411 U.S. 693, 702 (1973). Rather, it is a vehicle for a prevailing party in an action to enforce rights under §§ 1983, 1985 and 1986 to obtain reasonable attorney's fees as part of the costs. Therefore, Count Five of the CAC is dismissed *with* prejudice.

**F. Count Six – Violation of New Jersey RICO Statute**

Pursuant to New Jersey's RICO statute, N.J.S.A. 2C:41-1 *et seq.*, it is unlawful to be "employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-

2(c). To plead a claim for a violation of New Jersey's RICO statute, a plaintiff must allege: "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *Slimm v. Bank of Am. Corp.*, No. 12-cv-5846, 2013 U.S. Dist. LEXIS 62849, at *69-70 (D.N.J. May 2, 2013). A claim brought pursuant to N.J. RICO is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557; *Fimbel v. Fimbel Door Corp.*, 2014 WL 6882004, at *6 (D.N.J. Dec. 10, 2014) ("Courts have held that a claimant pleading a NJ RICO violation must comport with Rule 9(b)'s heightened pleading requirements for fraud.").

"Under the RICO Act, 'enterprise' is an element separate from the 'pattern of racketeering activity,' and the State must prove the existence of both in order to establish a RICO violation." *State v. Ball*, 141 N.J. 142, 161-62 (1995). The enterprise requirement under N.J. RICO requires a common purpose and an ascertainable structure "support[ing] the inference that the group engaged in carefully planned and highly coordinated criminal activity." *Id.* at 162. In addition, "the pattern of racketeering activity and the activity criminalized under RICO should be, or threaten to be, ongoing. . . . [S]ome degree of continuity, or threat of continuity, is required and is inherent in the 'relatedness' element of the 'pattern of racketeering activity.'" *Id.* at 167-68.

Defendants move to dismiss Plaintiffs' claim brought pursuant to the N.J. RICO statute, arguing that the CAC fails to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b)

and "provides nothing more than unadorned conclusory allegations – identifies no predicate racketeering act, much less a 'pattern' of such conduct that extended beyond the September 2013 lane closures." *See, e.g.*, Def. William Stepien Br. p. 16. Plaintiffs' sum total of allegations in the CAC are as follows:

> 85. Defendants' improper actions and misconduct constituted racketeering activity as they created an enterprise that affected trade and/or commerce as defined in N.J.S.A. 2C:41-1 et seq.
> 86. Defendants' improper actions and misconduct constitute a pattern of racketeering activity as there were at least two racketeering activities.
> 87. In the event that a defendant did not directly participate in a specific racketeering activity, all defendants are a part of each racketeering activity as all defendants conspired to engage in improper actions and misconduct alleged herein.

CAC, ¶¶ 85-87.

As an initial matter, the Court agrees with Defendants that Plaintiffs' N.J. RICO allegations as currently pled in the CAC are very general and conclusory, failing to provide each Defendant with notice of its alleged participation in the racketeering enterprise. Plaintiffs' N.J. RICO claim will be dismissed because it fails to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b) as it fails to set forth with particularity the circumstances surrounding its N.J. RICO claim. Based on the totality of the allegations Plaintiffs have made against Defendants, the Court finds that Plaintiffs have failed to set forth any facts which would establish the existence of an enterprise that is separate and apart from the alleged pattern of racketeering activity as they are required under the law. In addition, Plaintiffs have failed to allege any facts to support an allegation that there is an ongoing RICO pattern. Further, Plaintiffs' CAC is devoid of any allegation that there were two predicate acts of racketeering as required by N.J.S.A. 2C:41-1(a).

Accordingly, the Court will grant Defendants' Motions to Dismiss Count Six of the CAC for a violation of N.J. RICO. Such dismissal will be *without prejudice* to Plaintiffs' right to amend this claim to plead with particularity the elements necessary to establish that each Defendant violated the statute.

**G. Count Seven – Violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-1**

In addition to bringing claims pursuant to § 1983, Plaintiffs also bring a claim under the New Jersey State Constitution through the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1. A person may bring a civil action under the NJCRA in two circumstances: "(1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion or force." *Felicioni v. Admin. Office of Courts*, 404 N.J.Super. 382, 400 (App. Div. 2008). The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug.25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); *see generally Hedges v. Musco*, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

There is no dispute that Plaintiffs' NJCRA claim and § 1983 claim are based on the same underlying facts and theories. Having concluded that the CAC fails to state a viable §1983 claim, Count Seven will also be dismissed *without prejudice* for the reasons discussed above.

**H. Count Eight – Common Law Civil Conspiracy**

A civil conspiracy in New Jersey is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). To state a cause of action, a plaintiff must allege four elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. Super. Ct. Ch. Div. 1953), *modified on other grounds*, 109 A.2d 19 (N.J. Super. Ct. App. Div. 1954)).

Here, Plaintiffs' CAC contains merely conclusory allegations with respect to any alleged concerted activity of Defendants and fails to set forth any allegations of fact with respect to Defendants' joint action. While Plaintiffs claim that "Defendants acted in concert to engage in the improper actions and misconduct . . . by agreement between them to inflict a wrong or injury against plaintiffs and members of the plaintiff class," [CAC, ¶ 98], the CAC is devoid of any particularized facts which describe the purported agreements between Defendants, the location and time that the agreement was planned, the nature and extent of the unlawful purpose which formed the basis of the conspiracy, or the means by which the alleged scheme was achieved. Accordingly, Plaintiffs' Count Eight is dismissed *without prejudice* to Plaintiffs' right to amend the Class Action Complaint to set forth a viable common law civil conspiracy claim under New Jersey law which sets forth the who, what, when, where, and how of the conspiracy.

**I. Count Nine – Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1**

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must generally allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007). The broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). When the alleged unlawful act consists of an affirmative act, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act. However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* at 17–18. While a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a *per se* unlawful practice. *Id.* A claim under the NJCFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997); *see also Cox*, 138 N.J. at 18. To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995). Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the aforementioned elements, but such allegation must be pled with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Rait v. Sears, Roebuck and Co.*, No. 08–2461, 2009 WL 250309, at * 4 (D.N.J. Feb. 3, 2009); *Parker v. Howmedica Osteonics Corp.*, No. 07–2400, 2008 WL 141628, at *3 (D.N.J. Jan.14, 2008). These requirements may be satisfied "by pleading the date,

place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Lum*, 361 F.3d at 224 (internal quotations omitted).

In Count Nine of the CAC, Plaintiffs allege a cause of action for consumer fraud solely against Defendants Wildstein, Baroni and the Port Authority. Plaintiffs' sole allegation regarding Defendants' alleged fraud is that "defendants Wildstein, Baroni, and the Port Authority made representations regarding the access roads, toll plazas, and/or toll booths that were false and/or misleading." [CAC, ¶ 108.] Count Nine, as currently pled, is deficient for various reasons. First, the consumer fraud claim, as pled, fails to meet the heightened particularity requirements of Rule 9(b). Plaintiffs have failed to plead the date, time and/or place of the alleged misrepresentations made by Defendants. Plaintiffs have not even pled what were the misrepresentations that were made. In addition, Plaintiffs' claim is deficient as currently pled because Plaintiffs fail to set forth any facts which would establish a causal connection between Defendants' alleged unlawful conduct and Plaintiffs' ascertainable loss. Legal conclusions alone, without substantiating factual allegations, are insufficient to demonstrate the causal nexus required by the NJCFA. *See Dewey v. Volkswagen*, 558 F.Supp.2d 505, 526 (D.N.J. 2008), *modified on other grounds*, 558 F. App'x 191 (3d Cir. 2014). Therefore, Defendants' motions to dismiss this claim are granted. Accordingly, Count Nine is dismissed *without prejudice*.

**J. Count Ten -- Breach of Contract**

To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result. *See Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). A "covenant of good faith and fair dealing

is implied in every contract." *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) (citation omitted). This covenant requires that no party to a contract "shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002) (quotation marks and citation omitted). To prevail on a breach of contract claim grounded on an alleged breach of the implied covenant of good faith and fair dealing, a plaintiff must establish that the defendant "1) acted with bad motives or intentions or engaged in deception or evasion in the performance of contract; and 2) by such conduct, denied the plaintiff of the bargain initially intended by the parties." New Jersey Model Jury Charge (Civil), 4.10J "Bilateral Contracts: Implied Terms – Covenant of Good Faith and Fair Dealing" (December 2011) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210, 225 (2005)).

In Count Ten of the CAC, Plaintiffs allege claims of a breach of contract and breach of the implied covenant of good faith and fair dealing against the Port Authority. However, Plaintiffs fail to allege any facts in support of these claims. For example, Plaintiffs do not allege any facts which establish that it entered into a contract with the Port Authority, whether it was an express or implied contract, what were the terms of that contract, what were the obligations of each party, whether Plaintiffs performed their duties under the contract and whether Plaintiffs sustained any damages as a result of Defendant's breach. Therefore, the Port Authority's motion to dismiss Count Ten of the Complaint is granted and Plaintiffs' Breach of Contract claim is dismissed *without prejudice*.

**K. Count Eleven – Respondeat Superior**

In addition to the claims against CCFG, the State of New Jersey and the Port Authority for direct liability for various N.J. RICO violations, Plaintiffs also allege a claim against CCFG,

the State of New Jersey and the Port Authority based on vicarious superior liability under N.J. RICO. While some courts have applied the doctrine of respondeat superior to N.J. RICO claims, *see*, *e.g.*, *In re Tyco International, LTD.*, MDK Docket No. 01-1335-B All Cases Opinion No. 2007 DNH 072 (D.N.H. June 11, 2007), the Court will dismiss Plaintiffs' N.J. RICO respondeat superior claim because Plaintiffs' N.J. RICO claim as pled is deficient. Accordingly, Defendants' motion to dismiss Count Eleven will be granted *without prejudice* to Plaintiffs' right to file an Amended Class Action Complaint that sets forth a sufficient factual basis for claims of violations of N.J. RICO statute and vicarious liability thereunder.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **granted** and Defendants' Motion to Deny Class Certification is **denied** as premature. Counts Two, Three and Five of the CAC are dismissed *with* prejudice. An appropriate Opinion accompanies this Order.

DATED: June 29, 2015

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE