UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ZACHARY GALICKI, *et al.*,

Plaintiffs,

v.

STATE OF NEW JERSEY, *et al.*,

Defendants.

GW CAR SERVICE, LLC, *et al.*,

Plaintiffs,

v.

STATE OF NEW JERSEY, *et al.*

Defendants.

Civil Action No. 14-169 (JXN)(JSA)

**OPINION**

**NEALS**, District Judge

This matter comes before the Court on Plaintiffs Robert Cohen, Joan Cohen, and Victor Cataldo's (collectively "Plaintiffs"), motion for class certification pursuant to Federal Rule of Civil Procedure 23. (ECF No. 367.) Defendant Port Authority of New York & New Jersey filed an opposition to Plaintiffs' motion (ECF Nos. 368), in which Defendants William Baroni, and David Wildstein joined (ECF Nos. 370, 371), and Plaintiffs filed a reply in further support (ECF No. 369).[1] The Court carefully considered the parties' submissions and heard oral argument on March

---

[1] Defendant Port Authority and Plaintiffs were granted leave to file sur-replies addressing (1) the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ("TransUnion") and its purported impact on class certification; and (2) N.J.S.A. 32:1- 154.2c and its purported impact and plaintiffs' proposed use of E-Z Pass data. (ECF Nos. 375, 379.) Defendants argue that the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) precludes class certification based on the holding that standing requires a recognized harm. Defendants further argue that the proposed class includes those who crossed the bridge that were not delayed and thus

1, 2023 (ECF No. 385), pursuant to Local Civil Rule 78.1. For the reasons stated herein, Plaintiffs'

motion for class certification (ECF No. 367) is **DENIED** without prejudice.

## I.   BACKGROUND[2]

This civil class action arises from allegations that from September 9, 2013 through

September 13, 2013, Defendants improperly caused the closure of multiple lanes of travel, toll

booths, and toll plazas for the George Washington Bridge ("GWB") from the Borough of Fort Lee,

New Jersey into New York with the purpose of obstructing and creating traffic for political

retribution. (*See generally*, ECF No. 127, Second Consolidated Class Action Amended Complaint

("SAC").) Plaintiffs claim that the lane closures, extreme traffic and delays caused commuters to

be stuck in extreme traffic delays, to lose time, to lose gas, and to pay tolls to access the GWB

under false pretenses without receiving the benefit for which said tolls were paid. (SAC ¶ 256.)

Plaintiffs bring claims against various defendants for alleged damages related to the

closures. Those claims were consolidated and amended ("CAC") on December 19, 2014. In

February of 2015, various defendants moved to dismiss the CAC. Upon requests from the parties,

decision on the motions to dismiss was adjourned until June 2015. On June 29, 2015, this Court

dismissed the CAC, certain claims with prejudice and certain without. (*See* ECF Nos. 123–124.)

Plaintiffs were granted leave to file a Second Consolidated Class Action Amended Complaint to

cure the deficiencies in the claims dismissed without prejudice. (*See id.*) Plaintiffs filed the

amended complaint on August 6, 2015.

Plaintiffs propose to represent "[a]ll persons who experienced traffic delays on September

9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013

---

not harmed. Plaintiffs dismiss this argument by asserting such members are not included in the class and thus such
issue is of no moment. (*See* ECF No. 327 at 1-2; ECF No. 379 at 1-3.)

[2] The Court only sets forth the background necessary to decide the instant motion for class certification.

when they accessed the GWB from the Fort Lee Access Lanes and toll booth number 24 and crossed the bridge from New Jersey to New York." (ECF No. 367-1 at 20-21.) Plaintiffs seek certification of two subclasses:

> (1) class members who operated a vehicle that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth number 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013; and

> (2) class members who were passengers in vehicles that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013.

(*Id.* at 21.)

The Law Offices of Rosemarie Arnold filed this class action on January 9, 2014, on behalf of Plaintiffs Zachary Galicki, Joy Galicki, Eli Galicki, Robert Arnold, Kim Joscelyn, Elizabeth Psaltos, individually and on behalf of all others similarly situated, against Defendants State of New Jersey, Governor Christopher Christie, Bridget Anne Kelly, the Port Authority of New York & New Jersey, Bill Baroni, and David Wildstein. (ECF No. 1.)

Separately, on January 13, 2014, the Epstein Law Firm filed a lawsuit in the New Jersey Superior Court on behalf of Plaintiffs GW Car Service, LLC, Lime Taxi, LLC, Palisades Enterprises LLC, Fort Lee Car Service LLC, Vans R Us, Bergen Transportation Services, Inc., Robert Cohen, Joan Cohen, and Victor Cataldo, individually and on behalf of all others similarly situated, against the State of New Jersey, Chris Christie for Governor, Inc., David Wildstein, Bill Baroni, Bridget Anne Kelly, Michael Drewniak, and Bill Stepien. (*See* ECF No.1-1 in Civil Action 14-1319.) On February 28, 2014, the State of New Jersey and Michael Drewniak removed the case to the United States District. (*See* Notice of Removal, ECF No. 1 in Civil Action No. 14-1319.)

This action was consolidated with Civil Action No. 14-1319 on August 19, 2014 (*see* ECF Nos. 57, 58) and on October 6, 2014, the Epstein Law Firm was appointed as interim class counsel. (ECF Nos. 66, 67).

After protracted motion practice regarding the adequacy of Plaintiffs' Class Action Complaints (*see* ECF Nos. 123, 124, 183, 184, 263, 264), the surviving claims against Defendants Port Authority of New York & New Jersey (the "Port Authority"), David Wildstein ("Wildstein"), and Bill Baroni ("Baroni") (collectively, "Defendants")[3] in the SAC are as follows: Count One: violation of 42 U.S.C. § 1983 against Wildstein, Baroni, and Kelly, (SAC ¶¶ 290-311); Count Two: Governmental Responsibility pursuant to 42 U.S.C. § 1983 against Port Authority, (SAC ¶¶ 312-19); Count Four: N.J.S.A. § 10:6-1 *et seq.*, New Jersey Civil Rights Act ("NJCRA") against Wildstein, Baroni, and Kelly, (SAC ¶¶ 374-94); Count Five: Governmental Responsibility pursuant to the NJCRA against Port Authority, (SAC ¶¶ 395-408); and Count Six: Common Law Civil Conspiracy against all Defendants, (SAC ¶¶ 409-25).

On July 6, 2021, Plaintiffs moved for class certification pursuant to Fed. Civ. P. 23(a) and (b)(3). (ECF No. 367.) Port Authority filed an opposition to Plaintiffs' motion (ECF No. 368), in which Defendants Baroni (ECF No. 370) and Wildstein (ECF No. 371) joined, and Plaintiffs replied in further support (ECF No. 369).[4]

The motion is now ripe for resolution.[5]

---

[3] Defendants Bill Stepien Michael Drewniak, Chris Christie for Governor, Inc. and the State of New Jersey were dismissed from this case. (*see* ECF Nos. 129, 220, 264, 319.) Defendant Bridget Anne Kelly has yet to appear in this litigation and the Court entered default against her on May 4, 2015.

[4] Defendant Port Authority and Plaintiffs were granted leave to file sur-replies addressing (1) the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ("TransUnion") and its purported impact on class certification; and (2) N.J.S.A. 32:1- 154.2c and its purported impact and plaintiffs' proposed use of E-Z Pass data. (ECF Nos. 375, 379.)

[5] The parties agreed to bifurcated discovery, limiting Phase One to class discovery before the second phase merits discovery. (ECF Nos. 244-246.) Phase One fact discovery closed on June 15, 2018, as confirmed by counsel during oral argument on March 1, 2023 (ECF No. 385.)

## II.    LEGAL STANDARD

Class action lawsuits are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To invoke this exception, a plaintiff must satisfy all four requirements of Rule 23(a) and show that the action can be maintained under at least one of the three subsections of Rule 23(b). *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). Under Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the classes [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy)].

*See* Fed. R. Civ. P. 23(a). If these four requirements are satisfied, a plaintiff must show that at least one subsection of Rule 23(b) is met.

Because Plaintiffs here seek certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as predominance and superiority. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). In addition to these explicit requirements, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).

A party seeking class certification bears the burden of affirmatively demonstrating by a preponderance of the evidence that all the necessary requirements have been fulfilled. *Byrd, 784 F.3d at 163* (citation omitted). A court evaluating a motion for class certification is obligated to

probe behind the pleadings when necessary and conduct a "rigorous analysis" in order to determine whether the certification requirements are satisfied. *Comcast Corp.*, *569 U.S. at 33; In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir.2008), *as amended* (Jan. 16, 2009).

## III.   DISCUSSION

Prior to engaging in the Rule 23 analysis, the Court must first determine "whether Plaintiffs' proposed class is 'readily ascertainable based on objective criteria.'" *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 840 (D.N.J. 2018) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 478 (D.N.J. 2009)).

### Ascertainability

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir.2013). In order to determine whether a proposed class is ascertainable, the Court must engage in a two-part analysis. *Pollak*, 285 F. Supp. 3d at 841. First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." *Id.* (quoting *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009)). Second, the Court must be able to ascertain the class's membership in an objective manner. *Id.* Significantly, in demonstrating ascertainability, a plaintiff need not identify every class member at the class certification stage; instead a plaintiff is required to show that "class members can be identified." *Byrd*, 784 F.3d at 163 (citation omitted) (emphasis in original). Critically, it is not enough for Plaintiffs merely to "propose [such] a method" instead, they must also provide "evidentiary support that the method will be successful." *Carrera v. Bayer*

*Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). If, however, "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "As with all of the Rule 23 requirements, a court must rigorously analyze the proposed class to determine how the class is to be ascertained." *Afzal v. BMW of N. Am., LLC*, No. 15-8009, 2020 WL 2786926, at *8 (D.N.J. May 29, 2020) (quoting *Carrera*, 727 F.3d at 307).

In their motion for class certification, Plaintiffs define the proposed class and subclasses as follows: [6]

> All persons who experienced traffic delays on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013 when they accessed the GWB from the Fort Lee Access Lanes and toll booth number 24 and crossed the bridge from New Jersey to New York.
>
> > Subclass 1: class members who operated a vehicle that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth number 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013; and
> >
> > Subclass 2: class members who were passengers in vehicles that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013.

(ECF No. 367-1 at 20-21.)

Defendants do not challenge that the first prong of ascertainability, that the class is defined with reference to objective criteria, has been met. Rather, the parties' dispute hinges on whether Plaintiffs have demonstrated "there is 'a reliable and administratively feasible mechanism for

---

[6] Plaintiffs note that the proposed class definition in their motion for class certification is narrower than the definition set forth in the SAC based on evidence developed during Phase I discovery. (*See* ECF No. 367-1 at 20 n.13) (citing SAC ¶¶ 278-282.) Specifically, Plaintiffs are no longer pursing a class and/or subclass for local drivers who did not access the GWB via the Fort Lee local access lanes during the lane closures, nor are they pursuing a class and/or subclass on behalf of livery, taxi, and/or transportation companies. (*Id.*) Additionally, Plaintiffs state that GW Car Service LLC is no longer serving as a class representative but remains in the case and continues to pursue its claims on an individual basis. (*Id.*)

determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Hayes*, 725 F.3d at 355).

Plaintiffs assert that their proposed class and subclasses are reasonably ascertainable. They claim that the "overwhelming majority of class member (approximately 17,114 drivers and 14,376 passengers) can be identified through the Port Authority's extensive data...such as the E-Z Pass tag numbers for all vehicles who accessed the GWB via the Fort Lee Access Lanes on the dates and during the times in question who paid the toll using E-Z pass." (ECF Nos. 367-1 at 26; 367-13, Ex. K, Certification of Michael J. Epstein, Esq. ("Epstein Cert.").) Plaintiffs maintain that for the "3,423 drivers and 2,875 passengers" who cannot be identified through the Port Authority's records "affidavits *may be* acceptable in this case because of the limited facts required for the affidavit..."[7] (*Id.* at 27, n.15) (emphasis added). Plaintiffs claim that the information contained in the affidavits and supporting documentation can be "cross-checked with the Port Authority's database." (*Id.*)

Port Authority argues that the proposed class is not ascertainable. First, the Port Authority asserts that identifying class membership through "say so" affidavits is improper. (ECF No. 368 at 12.) Defendant claims that these affidavits would require information for which, in many cases, individuals' memories will be understandably diminished concerning journeys that would have taken place years earlier. (*Id.* at 13.) Second, Port Authority argues that Plaintiffs' proposed use of E-Z Pass data to identify who accessed the GWB from Fort Lee is "illegal" under state law. (*Id.* at 15) (citing N.J.S.A. 32:1-154.2c(c) and N.Y. Unconsol. Law § 6816-b(j).)[8] Port Authority further

---

[7] Plaintiffs claim the affidavit testimony would be limited to the person's status as either a driver or passenger, the date(s) and approximate time(s) of the person's crossing the GWB, the origin and destination of the driver/passenger's trip, and the type of vehicle used to cross the GWB. (*Id.*)

[8] Port Authority notes that in a letter dated October 31, 2017, "Plaintiffs were told *years* ago that E-Z Pass records could not legally be provided." (ECF Nos. 375 at 3, 368 at 15 (citing to Epstein Cert. Ex. K. at 1.) Despite the same, Defendant argues that "Plaintiffs make no reference to the statute's [N.J.S.A. 32:1-154.2c(c)] clear command that the

argues that even if the E-Z Pass data could be used, such records would only identify the E-Z Pass tag numbers of the vehicles that crossed the GW Bridge on the days in question but cannot identify the drivers and passengers inside those vehicles. (*Id.* at 16.) Port Authority asserts that since there are no records that can identify who was inside each vehicle, affidavits would be needed for all class members, which is fatal to class certification. (*Id.* at 17) (citing *Carrera*, 727 F.3d at 306).) Finally, Port Authority argues that Plaintiffs' expert Dr. Orley Ashenfelter did not offer a method for identifying the potential class members and his methodology for determining which vehicles were delayed is flawed, which is the critical inquiry for purposes of the class definition. (*Id.* at 17-18.)

Here, Plaintiffs advanced two ways to ascertain the class: first, Port Authority records of EZ Pass data; second, by affidavits of class members, attesting to the person's status as either a driver or passenger, the date(s) and approximate time(s) of the person's crossing the GWB, the origin and destination of the driver/passenger's trip, and the type of vehicle used to cross the GWB. (ECF No. 367-1 at 27.) Plaintiffs further claim that the affidavits can be cross-checked with the Port Authority's database. (*Id.*) The Court finds that Plaintiffs have not demonstrated by a preponderance of the evidence that there is a reliable and administratively feasible method of identify the individuals who were delayed in crossing the GW Bridge during the class period.

First, while Plaintiffs claim an overwhelming majority of class member can be identified through Port Authority records, it appears to the Court that Plaintiffs cannot access these records in light of the express limitation on the access and use of these records imposed by N.J.S.A. 32:1-

---

privacy restrictions apply more broadly than just to photographs and notably failed entirely to explore any aspect of this question in discovery, even though it is their burden to establish an administratively feasible method for identifying the class members." (ECF No. 375 at 4.)

154.2c.[9] Thus, while Plaintiffs contend that the statue "does not state ... that the Port Authority is prohibited from using EZ Pass records... to identify and/or notify class members" (ECF No 369 at 1), Plaintiffs have not provided the Court with evidentiary support that the method they propose will be successful. *See Carrera*, 727 F.3d at 306. Second, in the absence of such records from Port Authority, Plaintiffs will likely be entirely dependent on affidavits to identify all class members. The Third Circuit has made clear that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (citing *Byrd*, 784 F.3d at 170-171.) However, "[a]ffidavits from potential class members, standing alone, without "records to identify class members or a method to weed out unreliable affidavits," will not constitute a reliable and administratively feasible means of determining class membership. *Id.* (quoting *Byrd*, 784 F.3d at 171.) Accordingly, because Plaintiff has not supplied a reliable and administratively feasible method for ascertaining class members, the Court will deny Plaintiffs' motion for class certification without prejudice.

---

[9] N.J.S.A. 32:1-154.2c (*Liability of owner; punishment for violations; liability of owner of leased vehicle; access to records and reports*), in relevant part, provides that:

> A certified report of an employee or agent of the Port Authority reporting a violation of the toll collection regulations and any information obtained from a photo-monitoring system shall be deemed records kept in the ordinary business of the Port Authority and shall, when relevant, be made available for inspection and admission into evidence in a proceeding concerning a violation of the toll collection regulations, but shall not be deemed public records for the purpose of P.L.1963, c.73 (C.47:1A-1 et seq.) or the common law of access to public records. The certified reports and information, including but not limited to, any recorded image of any motor vehicle, the license plate of any motor vehicle or the operator or any passenger in any motor vehicle, shall not be discoverable as a public record by any person, entity or governmental agency, except upon a subpoena issued by a grand jury or a court order in a criminal matter; *nor shall it be admissible in evidence in any civil or administrative proceeding not directly related to a violation of the toll collection regulations or in any municipal court prosecution for a violation of any of the provisions of Title 39 of the Revised Statutes.*

N.J.S.A. 32:1-154.2c(c) (emphasis added).

Having found that Plaintiffs fail to demonstrate that the class is ascertainable, which is a prerequisite to class certification under Rule 23, the Court need not address the remaining Rule 23 requirements.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is **DENIED without prejudice** to Plaintiffs filing a renewed motion that addresses the deficiencies identified herein. An appropriate Form of Order accompanies this Opinion.

JULIEN XAVIER NEALS
United States District Judge