UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZACHARY GALICKI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF NEW JERSEY, et al., <br><br> Defendants. | Case No.: 2:14-cv-00169 (JXN) (JSA) <br><br> Honorable Julien Xavier Neals, U.S.D.J. <br> Honorable Jessica S. Allen, U.S.M.J. |
| GW CAR SERVICE, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF NEW JERSEY, et al., <br><br> Defendants. | Motion Day: May 1, 2023 |

**THE PORT AUTHORITY'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 2

ARGUMENT .......................................................................................................................... 3

I.     THE COURT CORRECTLY HELD THAT N.J.S.A. 32:1-154.2C BARS
       PLAINTIFFS' PROPOSED USE OF E-ZPASS DATA ...................................... 3

       A.     The Court Correctly Applied the Plain Text of the Statute ......................... 3

       B.     The Court's Holding was Consistent with the Remainder of the Statute ... 6

       C.     Differences Between the Statute and Other New Jersey Legislation
              Do Not Undermine the Court's Analysis....................................................... 6

       D.     The Statute Applies to the Port Authority.................................................... 7

II.    EVEN IF E-ZPASS DATA WERE AVAILABLE, CLASS CERTIFICATION
       STILL MUST BE DENIED.................................................................................. 8

       A.     Even with E-ZPass Records, Plaintiffs Still Would Need to
              Impermissibly Rely on Affidavits................................................................ 8

       B.     Plaintiffs Fail to Satisfy Rule 23 ................................................................. 9

III.   THE COURT'S HOLDING CAUSED NO MANIFEST INJUSTICE............................. 9

CONCLUSION...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carlson v. City of Hackensack*,
410 N.J. Super. 491 (App. Div. 2009) ...............................................................6

*Clark v. Prudential Ins. Co. of Am.*,
940 F. Supp. 2d 186 (D.N.J. 2013) .....................................................................2

*Conway v. A.I. duPont Hosp. for Child.*,
No. 04-cv-4862, 2009 WL 1492178 (E.D. Pa. May 26, 2009) ...........................3

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
539 F.3d 199 (3d Cir. 2008) ...............................................................................5

*Grimsley v. Manitowoc Co.*,
No. 15-cv-01275, 2016 WL 11710066 (M.D. Pa. Jan. 4, 2016) .........................2

*In re Kaiser Aluminum Corp.*,
456 F.3d 328 (3d Cir. 2006) ...............................................................................5

*Int'l Union of Operating Eng'rs, Loc. 68, AFL-CIO v. Del. River & Bay Auth.*,
147 N.J. 433 (1997) .............................................................................................7

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999) ...............................................................................2

*Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*,
830 F. Supp. 826 (D.N.J. 1992) ..........................................................................3

*Seigel v. N.J. Dep't of Env't Prot.*,
395 N.J. Super. 604 (App. Div. 2007) ................................................................5

*Tischio v. Bontex, Inc.*,
16 F. Supp. 2d 511 (D.N.J. 1998) .......................................................................2

STATUTES

N.J.S.A. 27:23-34.1.............................................................................................6, 7

N.J.S.A. 32:1-154.2.................................................................................................6

N.J.S.A. 32:1-154.2a...............................................................................................6

N.J.S.A. 32:1-154.2b............................................................................................4, 7

N.J.S.A. 32:1-154.2c......................................................................................*passim*

N.Y. Unconsol. Law § 6816-b.................................................................................7

OTHER AUTHORITIES

Committee Statement to A. 1346, N.J. P.L. 1996, ch. 98..........................................5

Fed. R. Civ. P. 23..................................................................................................2, 9

**INTRODUCTION**

Plaintiffs ask this Court to reconsider its denial of class certification with a host of meritless arguments that the Court rejected before and should reject again. Reconsideration is a drastic remedy that is rarely appropriate, and it certainly is not warranted here.

Plaintiffs' arguments center on the meaning of N.J.S.A. 32:1-154.2c, which—as the Court held—prohibits the use of E-ZPass records in this action. That provision states that such records are not "admissible in evidence in any civil or administrative proceeding not directly related to a violation of the toll collection regulations or in any municipal court prosecution for a violation of any of the provisions of Title 39 of the Revised Statutes." Much like other evidentiary limitations, such as those related to privileged materials or hearsay statements, this statute reflects the Legislature's decision to limit the admissibility of E-ZPass records in order to advance other policy interests—in this case, protecting the privacy of motorists using the E-ZPass system. Given that Plaintiffs hope to use these unavailable records to identify potential class members, the Court held that Plaintiffs failed to propose "a reliable and administratively feasible method for ascertaining class members." ECF 389 at 10.

With this motion, Plaintiffs do not dispute that N.J.S.A. 32:1-154.2c protects the confidentiality of E-ZPass records. Instead, Plaintiffs now argue that this statute shields the records of violations *only*—while leaving all *other* E-ZPass data open to discovery in this and other litigation. But Plaintiffs' arguments disregard the plain meaning of the statutory text, which instructs exactly what this Court held. Plaintiffs' argument would create an exception to the statute that does not exist and would complicate what should be a straightforward matter.

Worse, Plaintiffs' position would cause untold harm. For decades, the Port Authority has guarded the confidentiality of motorists' E-ZPass records, just as the Legislature instructed. If

civil litigants can now freely access and use these records (as Plaintiffs propose), the privacy of the many millions of drivers who use E-ZPass tags will be irreparably harmed.  That is not what the Legislature intended, and it is not what this Court should permit.

Moreover, even if N.J.S.A. 32:1-154.2c did not exist and did not protect the privacy of the data at issue, Plaintiffs' motion would still be poorly taken.  Even if they had the E-ZPass data, Plaintiffs still would need to rely upon individual affidavits to ascertain class membership—which, as this Court already recognized, would be improper.  And in addition to failing their burden on ascertainability, Plaintiffs cannot satisfy all of the Rule 23 requirements. The Court was thus correct to deny class certification.

## LEGAL STANDARD

"[R]econsideration is an extraordinary remedy" that is granted "very sparingly."  *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013).  Reconsideration must be denied unless the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Here, Plaintiffs seek reconsideration based only on the third ground.  Mot. at 5.

"A mere point of disagreement between a court and a litigant will not constitute clear error or manifest injustice.  Instead, a court's judgment must be dead wrong."  *Grimsley v. Manitowoc Co.*, No. 15-cv-01275, 2016 WL 11710066, at *2 (M.D. Pa. Jan. 4, 2016) (citation and quotation marks omitted); *see also Clark*, 940 F. Supp. 2d at 189 ("[A] difference of opinion with the court's decision should be dealt with through the normal appellate process.").  Moreover, reconsideration is not "an opportunity for a second bite at the apple."  *Tischio v.*

2

*Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998).  It is not a time to restate old arguments or

to advance new arguments that could have been raised earlier.  *See, e.g.*, *Conway v. A.I. duPont*

*Hosp. for Child.*, No. 04-cv-4862, 2009 WL 1492178, at *6 (E.D. Pa. May 26, 2009).  Instead,

"[o]nly dispositive factual matters and controlling decisions of law which were presented to the

court but not considered . . . may be the subject of a motion for reconsideration."  *Resorts Int'l,*

*Inc. v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992).

**ARGUMENT**

**I.     THE COURT CORRECTLY HELD THAT N.J.S.A. 32:1-154.2C BARS
PLAINTIFFS' PROPOSED USE OF E-ZPASS DATA.**

In seeking reconsideration, Plaintiffs argue solely that the Court misconstrued N.J.S.A.

32:1-154.2c to preclude the use of E-ZPass data to ascertain potential class members.  But

Plaintiffs' arguments about this statute all either were or could have been made previously, and

they are thus not a proper basis for reconsideration.  Nor should they give the Court any pause,

because the Court construed N.J.S.A. 32:1-154.2c as the plain meaning of the text requires.

**A.     The Court Correctly Applied the Plain Text of the Statute.**

Plaintiffs first argue that the Court disregarded the "clear and unambiguous terms" of

N.J.S.A. 32:1-154.2c, which—as Plaintiffs see it—"only concerns specific documents, records,

and data that relate to toll violations."  Mot. at 7.  Thus, in Plaintiffs' view, this statute "has no

bearing on the use or disclosure of electronic toll payment/collection or E-ZPass data,

information, and/or records" in any other context—and thus does not protect confidentiality

when there has *not* been a toll violation.  *Id.* at 7-8.  But only Plaintiffs misread the statute.

N.J.S.A. 32:1-154.2c(c) prohibits disclosure of "certified report[s] of an employee or agent

of the Port Authority reporting a violation of the toll collection regulations and any information

obtained from a photo-monitoring system."  N.J.S.A. 32:1-154.2c(c).  Plaintiffs emphasize the

3

first part of this provision, which does indeed concern only "certified report[s] . . . *reporting a*

*violation.*" Mot. at 6 (emphasis added by Plaintiffs). But Plaintiffs ignore the provision's second

part, which more broadly protects "*any information* obtained from a photo-monitoring system"—

and, by its terms, is not limited to violations. N.J.S.A. 32:1-154.2c(c) (emphasis added). The

only question, then, is whether E-ZPass data is "information obtained from a photo-monitoring

system." *Id.* The Court correctly held that the answer is yes.

To suggest otherwise, Plaintiffs highlight how the statute defines a "photo-monitoring

system" as a "vehicle sensor . . . which automatically produces one or more photographs, one or

more microphotographs, a videotape or other recorded images of *each vehicle at the time the*

*vehicle is used or operated in violation of the toll collection regulations of [t]he Port Authority.*"

Mot. at 7 (quoting N.J.S.A. 32:1-154.2b) (emphasis added by Plaintiffs). As Plaintiffs see it, this

means violations are the statute's sole focus. But by its plain terms, the statute applies to a

sensor "*which* automatically produces" records of a violation—not *only* "when it" produces such

records (as Plaintiffs contend). And Plaintiffs do not dispute that the E-ZPass records come from

a system that does indeed "automatically produce[]" records of toll violations (along with

records of other bridge crossings), as the Port Authority previously explained. N.J.S.A. 32:1-

154.2b; *see* ECF 375 at 3-4 (Port Authority sur-reply); ECF 386-1 at 2 (Aff. of Charles Fausti).

By the statute's plain terms, then, the E-ZPass data comes from a "photo-monitoring system."

This makes complete sense. It would be surprising, to say the least, if the Legislature chose

to shield only records of toll violations, leaving unprotected the huge majority of collected data

that can reveal highly sensitive information about the movements of millions of people.[1] It is a

---

[1] In a footnote, Plaintiffs argue that N.J.S.A. 32:1-154.2c(c) does not use the term "E-ZPass," and so the Legislature thus did not intend to capture E-ZPass data. Mot. at 12 n.2. But the legislative history indicates that the Legislature *did* intend to cover E-ZPass data collection.

"basic principle of statutory construction" that courts should avoid statutory interpretations that lead to such "absurd results."  *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006); *see also Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) (courts should avoid statutory "constructions that produce 'odd' or 'absurd results' or that are 'inconsistent with common sense'").

Moreover, the Court's interpretation of the statute also comports with the longstanding understanding of the Port Authority, which is the agency tasked with and administering the E-ZPass system and enforcing the toll regulations.  The Port Authority has always viewed E-ZPass records as highly confidential, dating back long before this lawsuit.  *See* ECF 386-2 at 2 (Decl. of Stephen Marinko, Esq.).  Under New Jersey law, "[i]t is settled that an administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to [a court's] deference."  *Seigel v. N.J. Dep't of Env't Prot.*, 395 N.J. Super. 604, 613 (App. Div. 2007) (cleaned up).  Thus, even if the statutory provisions at issue were ambiguous (which they are not), the Court should defer to the construction that the Port Authority adopted decades ago and has consistently applied since.

---

*See* Committee Statement to A. 1346, N.J. P.L. 1996, ch. 98, https://repo.njstatelib.org/ bitstream/handle/10929.1/8506/L1996c98.pdf?sequence=1&isAllowed=y (N.J.S.A. 32:1-154.2a to 32:1-154.2f):

> The electronic collection of tolls on highways and bridges is in the process of being implemented in the States of New Jersey and New York by the inauguration of the "E-Z-pass system." … This bill clarifies the existing laws concerning the Port Authority of New York and New Jersey with regard to the liability of the owners of motor vehicles for toll collection violations and the status and use of photo-monitoring evidence in order to permit the Port Authority to expediently implement electronic toll collection technology.

### B.     The Court's Holding was Consistent with the Remainder of the Statute.

Plaintiffs next argue that the Court failed to consider N.J.S.A. 32:1-154.2c(c) "*in pari materia* with the other provisions of the statute" and thus did not "harmonize[]" these provisions. Mot. at 9.  As per Plaintiffs, because certain provisions surrounding N.J.S.A. 32:1-154.2c(c) concern only toll violations, the confidentiality protections must similarly be so limited.  Mot. at 9-10.  But this mode of analysis is relevant only "when the Legislature's intent is unclear"—and has no place where, as here, a statute's language is "clear and unambiguous." *Carlson v. City of Hackensack*, 410 N.J. Super. 491, 497 (App. Div. 2009).  Because the text of N.J.S.A. 32:1-154.2c(c) plainly is not limited to toll violations, there is no reason to look at surrounding statutory provisions.

Nor, for that matter, is it necessary to all but eliminate E-ZPass confidentiality in order to "harmonize" the statutory scheme.  The statutory scheme requires the payment of tolls in an amount "prescribed by the Port Authority," N.J.S.A. 32:1-154.2, imposes liability for the failure to pay tolls, N.J.S.A. 32:1-154.2a, and regulates the system with which the Port Authority monitors and collect information about payment and non-payment of tolls, N.J.S.A. 32:1-154.2c. Indeed, the entire scheme applies to all drivers, not just drivers who fail to pay tolls.  What would be incongruous is *Plaintiffs'* construction of N.J.S.A. 32:1-154.2c, under which all vehicles can be tracked but only the toll violations are confidential.  The Court's holding, in contrast, is exactly what one would expect of a statutory scheme that allows vehicle tracking— and, again, is what the statutory text requires.

### C.     Differences Between the Statute and Other New Jersey Legislation Do Not Undermine the Court's Analysis.

Plaintiffs also argue that their preferred reading of N.J.S.A. 32:1-154.2c(c) is supported by N.J.S.A. 27:23-34.1, because that provision broadly defines a "toll collection monitoring system"

to "include any other process that identifies a vehicle by photographic, electronic or other method." Mot. at 12. In Plaintiffs' view, the breadth of N.J.S.A. 27:23-34.1 calls for a narrow construction of N.J.S.A. 32:1-154.2c(c) that applies only to violations.

But the fact that a "toll collection monitoring system" covers "*any . . . process that identifies a vehicle*" has no bearing on whether E-ZPass data is collected by a "photo-monitoring system." Nor does the wide scope of the former term call for an artificially narrow reading of the latter—particularly when nothing about the Court's holding would render the "toll collection monitoring system" definition surplusage. All that matters is whether E-ZPass data is collected by a "photo-monitoring system." The Court correctly held that it is.

### D.       The Statute Applies to the Port Authority.

Finally, Plaintiffs repeat their previous argument that N.J.S.A. 32:1-154.2c(c) is inapplicable to the Port Authority because there is no "substantially similar" New York law. But, first of all, a comparison of state laws is inapt for an evidentiary privilege that (much like attorney-client privilege or the hearsay rule) limits the use of certain materials in court proceedings. Second, any comparison of the New York and New Jersey laws would show their substantial similarity. *Compare* N.J.S.A. 32:1-154.2c(c) *with* N.Y. Unconsol. Law § 6816-b(j). As the Port Authority explained in its sur-reply (ECF 375 at 4), these two laws cover the same records, *compare* N.Y. Unconsol. Law § 6816-b(j) *with* N.J.S.A. 32:1-154.2b (Definitions), and they impose very similar limitations on the use of those records. *Compare* N.Y. Unconsol. Law § 6816-b(j) *with* N.J.S.A. 32:1-154.2c(c). While the two laws are not identical, they do not need to be exactly the same in order to apply here. *See, e.g., Int'l Union of Operating Eng'rs, Loc. 68, AFL-CIO v. Del. River & Bay Auth.*, 147 N.J. 433, 447 (1997).

## II.     EVEN IF E-ZPASS DATA WERE AVAILABLE, CLASS CERTIFICATION STILL MUST BE DENIED.

Even if Plaintiffs' statutory interpretation were correct, that does not mean the Court should certify the class, as Plaintiffs suggest. *See* Mot. at 15. Far from it. Instead, for reasons that the Port Authority has previously explained, class certification still must be denied even if the disclosure of E-ZPass data were permissible.

### A.     Even with E-ZPass Records, Plaintiffs Still Would Need to Impermissibly Rely on Affidavits.

As the Court has already held, the use of standalone affidavits to identify class members cannot "meet the ascertainability standard," because affidavits alone are not a "reliable and administratively feasible method for ascertaining class members." ECF 389 at 10. Notably, Plaintiffs do not contest this holding in their motion for reconsideration. But this principle sinks their motion even if the E-ZPass records were available to them.

As the Port Authority has previously explained, the E-ZPass records do not identify any driver, let alone passenger, who crossed the George Washington Bridge during the lane closures at issue. E-ZPass tags are transferrable between vehicles, and vehicles can be driven by anyone. As a result, even with E-ZPass records, affidavits would be required to close the gap between evidence that a *tag* crossed the George Washington Bridge and proof that a particular *person* did so. *See* ECF 368 at 16; ECF 375 at 3 n.1. And even with E-ZPass records, there would no objective evidence that could be used to verify the affidavits, which would instead need individualized cross-examination for every potential class member. The use of affidavits in this manner would run into the same problems that the Court already recognized. *See* ECF 389 at 10.

Furthermore, the Port Authority "owns and maintains individualized data only for those tags that it issues." ECF 386-1 at 2. The Port Authority lacks this data "for tags issued by any other agency," for which the Port Authority cannot even identify tag registrants. *Id.* Such tags

8

from other agencies are a sizable portion of the records at issue, *see id.*, and yet Plaintiffs—who bear the burden of demonstrating ascertainability—have never proposed *any* method (much less an administratively feasible one) for navigating this multi-state tangle, including the impact of other states' privacy laws.  The unavailability of E-ZPass records is thus the least of Plaintiffs' ascertainability problems.

       **B.**      **Plaintiffs Fail to Satisfy Rule 23.**

Having held that Plaintiffs "fail[ed] to demonstrate that the class is ascertainable, which is a prerequisite to class certification under Rule 23," the Court did not address the remaining Rule 23 requirements.  ECF 389 at 11.  As the Port Authority has previously explained, these other requirements call for class certification to be denied even if Plaintiffs' ascertainability problems are ignored.  *See* ECF 368 at 18-30.  As a result, even if the Court were to change both its interpretation of N.J.S.A. 32:1-154.2c (as Plaintiffs request) as well as its understanding of when affidavits can be used (which Plaintiffs' motion does not dispute), class certification would still be improper.

**III.**     **THE COURT'S HOLDING CAUSED NO MANIFEST INJUSTICE.**

Finally, although Plaintiffs make passing reference to a "manifest injustice" also requiring reconsideration, they offer no actual argument on the point.  Nor could they show a manifest injustice—particularly when they have known about the E-ZPass records' unavailability for *years*, yet have done nothing about it, and when the Court's denial of class certification has no impact *at all* on the individuals who may actually have been injured by the alleged misconduct, as those individuals have been carved out of the proposed class by Plaintiffs' counsel.  ECF 367-1 at 18 n.9 (excluding claims for "emotional distress, lost wages, and other damages that are largely unique to individual class members and are, thus, not capable of being calculated or determined on a class-wide basis").

## CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' motion for

reconsideration.


Dated: April 17, 2023


Respectfully submitted,

s/ Rebekah E. Blake

David R. Kromm, Esq.
The Port Authority of New York & New Jersey
150 Greenwich Street, 24th Floor
New York, NY 10007

Theodore M. Grossman, Esq. (Admitted Pro Hac Vice)
Rajeev Muttreja, Esq. (Admitted Pro Hac Vice)
Rebekah E. Blake, Esq.
JONES DAY
250 Vesey Street
New York, NY 10281
*Counsel for Defendant*
*The Port Authority of New York and New Jersey*

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I caused the foregoing Memorandum of Law to be filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

*s/ Rebekah E. Blake*
Rebekah E. Blake
