# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZACHARY GALICKI, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 14-00169 (JXN)(JSA) |
| GW CAR SERVICE, LLC, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>STATE OF NEW JERSEY, *et al*.<br><br>　　　　　Defendants. | **OPINION** |

**NEALS**, District Judge

　　This matter comes before the Court on Plaintiffs Robert Cohen, Joan Cohen, and Victor Cataldo's (collectively "Plaintiffs") motion for reconsideration of the Court's March 13, 2023 Opinion and Order (ECF Nos. 389, 390) denying without prejudice Plaintiffs' class certification. (ECF No. 392.) Defendant Port Authority of New York & New Jersey filed an opposition to Plaintiffs' motion (ECF No. 393), in which Defendants William Baroni and David Wildstein joined (ECF Nos. 394, 395). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' motion for reconsideration (ECF No. 392) is **DENIED**.

## I. BACKGROUND[1]

This civil class action arises out of the closure of multiple lanes of traffic to the George Washington Bridge ("GWB") from September 9-13, 2013. Plaintiffs brought claims against various defendants for alleged damages related to the lane closures. Plaintiffs' claims were consolidated and amended on December 19, 2014. (*See* ECF No. 70; Consolidated Class Action Amended Complaint ("CAC"), ECF No. 71.)

On February 23, 2015, various defendants moved to dismiss the CAC. (*See* ECF Nos. 84, 86, 87, 88, 89.) On June 29, 2015, the Court dismissed the CAC and granted Plaintiffs leave to file an amended complaint. (*See* ECF No. 123 at 5-20; ECF No. 124 at 2.)

On August 6, 2015, Plaintiffs filed their Second Consolidated Class Action Amended Complaint ("SAC") on behalf of a putative class. (*See* ECF No. 127.)[2] In the SAC, Plaintiffs allege numerous claims sounding in tort and civil rights violations against the State of New Jersey (the "State" or "New Jersey"), Chris Christie for Governor, Inc. ("CCFG"), the Port Authority of New York & New Jersey ("the Port Authority"), Bridget Anne Kelly ("Kelly"), Michael Drewniak ("Drewniak"), David Wildstein (Wildstein"), Bill Baroni (Baroni"), and Bill Stepien ("Stepien"), as well as fictitious, and as yet unknown, individuals and corporations for alleged damages related to the lane closures. (*See id.*) After protracted motion practice regarding the adequacy of the SAC,

---

[1] The underlying facts are set forth at length in the Court's March 13, 2023 Opinion (ECF No. 389), from which Plaintiffs seek reconsideration. In the interest of judicial economy, the Court only sets forth the background necessary to decide the instant motion.

[2] Plaintiffs asserted the following ten counts in the SAC: (1) Deprivation of Federal Constitutional Rights in violation of 42 U.S.C. § 1983; (2) Governmental Responsibility in violation of 42 U.S.C. § 1983; (3) violation of N.J.S.A. § 2C:41-1 *et seq.*, New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJ RICO"); (4) violation of New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*; (5) Governmental Responsibility pursuant to N.J.S.A. 10:6-1 *et seq.;* (6) Common Law Civil Conspiracy; (7) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*; (8) Breach of Contract and Implied Covenant of Good Faith and Fair Dealing; (9) Tortious Interference; and (10) *Respondeat Superior*.

six claims survived[3] against Defendants Port Authority, Wildstein, and Baroni (collectively, "Defendants")[4] (*See* ECF Nos. 183-184.)

On July 6, 2021, Plaintiffs moved for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (ECF No. 367.) In their motion, Plaintiffs defined the proposed class and subclasses as follows:

> All persons who experienced traffic delays on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013 when they accessed the GWB from the Fort Lee Access Lanes and toll booth number 24 and crossed the bridge from New Jersey to New York.
>
> Subclass 1: class members who operated a vehicle that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth number 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013; and
>
> Subclass 2: class members who were passengers in vehicles that experienced traffic delays accessing the GWB from the Fort Lee Access Lanes and toll booth 24 on September 9, 2013, September 10, 2013, September 11, 2013, September 12, 2013 and/or September 13, 2013.

(ECF No. 367-1 at 20-21.)[5]

On March 13, 2023, the Court issued an Opinion and Order denying without prejudice Plaintiff's motion for class certification (the "March 13 Order"). (ECF Nos. 389, 390.) The Court found that Plaintiffs failed to satisfy the Third Circuit's ascertainability requirement because

---

[3] On September 16, 2016, the motions to dismiss filed by the Port Authority, Wildstein, CCFG", the State, Drewniak, and Baroni were granted in part and denied in part. (*See* ECF Nos. 183, 184.) Plaintiffs were allowed to proceed on Count One: violation of 42 U.S.C. § 1983 against Wildstein, Baroni, and Kelly; Count Two: Governmental Responsibility pursuant to 42 U.S.C. § 1983 against Port Authority; Count Four: N.J.S.A. § 10:6-1 *et seq.*, New Jersey Civil Rights Act ("NJCRA") against Wildstein, Baroni, and Kelly; Count Five: Governmental Responsibility pursuant to the NJCRA against the Port Authority; and Count Six: Common Law Civil Conspiracy against all Defendants. (*See id.* at 2.) Additionally, the motion to deny class certification filed by the State and Drewniak, and joined by Port Authority, was denied as premature. (*Id.*)

[4] Defendants Stepien, Drewniak, and CCFG were dismissed from this action. (*See* ECF Nos. 129; 220; 318.) On July 20, 2017, the Court granted the State's motion to dismiss Plaintiffs' common law conspiracy and ordered the State be terminated from the action "as there are no viable claims remaining against it." (*See* ECF No. 264.) Defendant Bridget Anne Kelly has yet to appear in this litigation, and the Court entered default against her on May 4, 2015.

[5] The proposed class definition in Plaintiffs' motion for class certification is narrower than the definition set forth in the SAC. (*Compare* ECF No. 367-1 at 20-21 *with* SAC ¶¶ 278-282.)

N.J.S.A. 32:1-154.2c(c) precludes discovery of the E-ZPass records necessary to identify class members and, without those records, Plaintiffs would be entirely dependent upon individual affidavits to ascertain class membership. (ECF No. 389 at 9-10.) As a result, the Court concluded that Plaintiffs failed to demonstrate that there was a reliable and administratively feasible method of identifying the individuals who were delayed in crossing the GWB during the class period.

On March 23, 2023, Plaintiffs moved for reconsideration of this Court's March 13 Order, denying Plaintiffs' motion for class certification. (*See* ECF No. 392.) The Port Authority opposed the motion (ECF No. 393), which Wildstein and Baroni joined (ECF No. 394). The motion is now ripe for resolution.

## II. **LEGAL STANDARD**

There is no Federal Rule of Civil Procedure authorizing a motion for reconsideration. However, Local Civil Rule 7.1 permits such motions as "an extraordinary remedy that is [to be] granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003)); *Unimed Int'l, Inc. v. Fox News Network, LLC*, No. 20-cv-17335, 2024 WL 1585389, at *2 (D.N.J. Apr. 10, 2024). Therefore, courts will only grant Motions for Reconsideration if (i) there has been an intervening change in controlling law, (ii) evidence unavailable at the time the court made its decision has become available, or (iii) the court must correct a clear error of law or fact or must prevent manifest injustice. *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 170 F.3d 669, 677 (3d Cir. 1999).

Reconsideration is not appropriate where the movant merely disagrees with the court's decision, "as such disagreement should 'be raised through the appellate process.'" *Gurvey v. M&T Bank, Inc.*, No. 20-cv-7831, 2021 WL 395872, at *1 (D.N.J. Feb. 4, 2021) (quoting *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999)). Neither may reconsideration

motions "'be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry' of the initial decision." *Unimed*, 2024 WL 1585389 at *2 (quoting *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)). Thus, the movant must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L. Civ. R. 7.1(i). If the movant claims something has been "overlooked," it must be related to "some dispositive factual or legal matter." *Kraft v. Wells Fargo & Co.*, No. 16-cv-5729, 2018 WL 1522733, at *2 (D.N.J. Mar. 28, 2018) (citing L. Civ. R. 7.1(i)).

## III. DISCUSSION

It is well-established that the motion for reconsideration is not a vehicle to rehash arguments. *See, e.g.*, *Averhart v. Commc'ns Workers of America*, 688 Fed. App'x 158, 164 (3d Cir. 2017) (affirming District Court's denial of a motion for reconsideration where movant "rehashed" earlier arguments); *Altana Pharma AG v. Teva Pharm. USA, Inc.,* No. 04-cv-2355, 2009 WL 5818836, at *1 (D.N.J. Dec. 1, 2009) ("[C]ourts in this District routinely deny motions for reconsideration that simply re-argue the original motion.").

In their motion, Plaintiffs assert no intervening change in controlling law or new evidence. Instead, Plaintiffs argue that reconsideration of the March 13 Order is warranted because the Court's interpretation and reliance on N.J.S.A. 32:1-154.2c(c) to deny Plaintiffs class certification was clearly erroneous. (*See generally* ECF No. 392.) Specifically, Plaintiffs argue that this Court failed to (1) address or consider the plain language of N.J.S.A. 32:1-154c, (2) interpret N.J.S.A. 32:1-154c *in pari materia* with the remainder of the statute, (3) address or consider vital differences between the statute and other laws relating to E-ZPass records, and (4) consider that New Jersey and New York do not have substantially similar enactments regarding E-ZPass data. (ECF No. 392

at 6-15.) The Court notes that despite Plaintiff's contention to the contrary, these issues were considered but ultimately proved immaterial to this Court's conclusion. (*See* ECF No. 389 at 9-10.) Thus, Plaintiffs have not provided a proper basis for reconsideration, and for the reasons stated below, Plaintiffs' motion for reconsideration will be denied.

### A. Plain language of N.J.S.A. 32:1-154.2c(c)

Plaintiffs contend that this Court failed to "address and consider the plain language of" N.J.S.A. 32:1-154c(c) in its decision (ECF No. 392 at 6.) Plaintiffs argue that the statute "has no bearing on the use or disclosure of electronic toll payment/collection or E-ZPass data, information, and/or records" (*Id.* at 7-8) because it "only restricts the use of 'certified reports' and 'information obtained from a photo-monitoring system' related to toll violations to proceedings 'directly related to a violation of the toll regulations or in any municipal court prosecution.'" (*Id.* at 7.) Thus, Plaintiffs contend that N.J.S.A. 32:1-154c(c) "does not prohibit the narrowly tailored and limited use of E-ZPass data . . . to identify and notify class members." (*Id.* at 8.)

Plaintiffs, however, ignore a crucial part of the statute's text. N.J.S.A. 32:1-154c(c), in clear and unambiguous terms, states that "*any* information obtained by a photo-monitoring system . . . shall not be discoverable by any person, entity, or governmental agency, *except upon a subpoena issued by a grand jury or a court order in a criminal matter*." (emphasis added). Here, neither party disputes that the E-ZPass records are, in fact, "obtained by a photo-monitoring system," (*see, e.g.*, ECF No. 392-1 at 6-7; ECF No. 393 at 4). Further, this matter involves neither a grand jury subpoena nor a criminal matter. Accordingly, there is little doubt that the E-ZPass records are not discoverable in this matter.

### B. *In pari materia* **canon of statutory construction**

Plaintiffs also argue that the Court's reading of the statute is clearly erroneous and requires reconsideration because it failed to consider N.J.S.A. 32:1-154c *in pari materia* with the remainder of the statute. Plaintiffs contend that N.J.S.A. 32:1-154.2-154.2f "concern the Port Authority's power to assess and collect tolls for use of interstate vehicle crossings and to impose liability against a vehicle owner or operator for toll violations," and does not preclude access to toll booth data to identify and notify class members. (ECF No. 392 at 9.) Implicit in this argument is the idea that the statutory provisions, when taken together, only apply to "violations of [t]he Port Authority's toll regulations" (ECF No. 392 at 10) and, therefore, do not protect data that does not concern a violation.

"[U]nder the *in pari materia* canon, statutes addressing the same subject matter generally should be read 'as if they were one law.'" *Lafferty v. Gito St. Riel*, 495 F.3d 72, 82 (3d Cir. 2007) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 313 (2006)). However, the utilization of the *in pari materia* canon of statutory construction cannot "override the clear meaning of a statute's text." *See In re Phila. Newspapers, LLC*, 418 B.R. 548, 569 (E.D. Pa. 2009) (quoting *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2005)). As discussed above, the statute's plain language clearly precludes discovery of E-ZPass data for *any* purpose other than a "criminal matter" and "violation of toll collection regulations." *See* N.J.S.A. 32:1-154c(c). Thus, reading N.J.S.A. 32:1-154c *in pari materia* with the remainder of the statute yields the same result. As correctly noted by the Port Authority, "the entire [statutory] scheme applies to all drivers, not just drivers who fail to pay tolls." (ECF No. 393 at 6.) Therefore, it would be an "absurd result" for this Court to hold that the statute only protects data involving violations even though all drivers

are tracked through E-ZPass systems subject to this statute. *See Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147, 152 (3d Cir. 2018); *see generally,* N.J.S.A. 32:1-154.

### C. Differences between N.J.S.A. 32:1-154.2c(c) and other N.J. statutes

Plaintiffs aver that the legislature did not restrict Port Authority's use of E-ZPass data under N.J.S.A. 32:1-154.2c(c) because, in a separate statute, N.J.S.A. 27:23-1, *et seq.*, the legislature bound such data using different language. (*See* ECF No. 392 at 11.) Notably, Plaintiffs argue that the "different[] . . . definition" of a "photo-monitoring system" set forth in N.J.S.A. 27:23-1 "should have guided this Court's interpretation of N.J.S.A. 32:1-154.2c(c)." (*Id.* at 11-12.)

"[O]nly if the ordinary meaning of a statute and the statute's legislative history fail to provide sufficient guidance to a term's meaning can [a court] look to other statutes pertaining to the same subject matter which contain similar terms." *United States v. Diaz*, 66 F.4th 435, 442 (3d Cir. 2023) (quoting *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 158 (3d Cir. 2019)) (quotations omitted). As discussed at length above, the statute's plain language clearly restricts the use of E-ZPass data in most circumstances. *See* N.J.S.A. 32:1-154c(c). Therefore, this Court did not err by not considering the language of N.J.S.A. 27:23-1 *et seq.*, a statute that is not at issue in this matter.

### D. Differences between the N.J. and N.Y. statutes

Plaintiffs further argue that this Court failed to consider that New Jersey and New York "do not have 'substantially similar' enactments regarding Port Authority E-Z Pass data," which would make N.J.S.A. 32:1-154c(c) inapplicable to the Port Authority. (ECF No. 392 at 13.) Plaintiffs previously raised this argument before this Court, and thus, it had been duly considered. (*See* ECF No. 369 at 5; Transcript of March 1, 2023 Oral Argument at 12:5-13, ECF No. 391.)

Plaintiffs claim that, in order for a state to impose its law on a bi-state entity, both states in the compact must have "substantially similar" laws. (ECF No. 392 at 13-14.) New Jersey courts,

however, including those decisions that Plaintiffs cite, have instead applied state law to bi-state entities even where laws were merely "somewhat similar." *See, e.g.*, *Bunk v. Port Auth. of N.Y. & N.J.*, 676 A.2d 118, 122 (N.J. 1996); *Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 277 (3d Cir. 2002) ("According to the New Jersey view, . . . a state may meet the requirements of 'concurring in' the other's legislation merely by passing a somewhat similar statute of its own."). The Third Circuit has applied this standard when determining whether the laws of two states "concur" with one another and thus apply to bi-state compacts. *Local 542*, 311 F.3d at 277-78 (citing *Moore v. Del. River Port Auth.,* 80 F. Supp. 2d 264, 268 (D.N.J.1999)).

Here, both the New Jersey and New York statutes were enacted by their respective legislatures to regulate the same kinds of records and impose similar restrictions on the use of those records. *Compare* N.J.S.A. 32:1-154.2c(c) *with* N.Y. CLS Unconsol., Ch. 157, 16-b(j). Thus, while the statutes are not as similar as Plaintiffs suggest, N.J.S.A. 32:1-154.2c(c) parallels New York law to the degree that it can be applied to the Port Authority. *See Bunk*, 676 A.2d at 122. Additionally, in order for concurring state laws to apply to bi-state compacts, the statutes must "expressly mention[] the bi-state entity" and intend to bind it. *Local 542*, 311 F.3d at 278 (quoting *Rose v. Port Auth. of N.Y. & N.J.,* 13 F. Supp. 2d 516, 523 (S.D.N.Y.1998)); *see Del. River Joint Toll Bridge Comm'n v. Oleksiak*, 612 F. Supp. 3d 438, 442-43. Here, both statutes at issue mention the Port Authority, clearly indicating that they are meant to bind the Port Authority's actions. *See Oleksiak*, 612 F. Supp. 3d at 443; N.J.S.A. 31-154.2c; N.Y. CLS Unconsol., Ch. 157, 16-b(j). Therefore, N.J.S.A. 32:1-154.2c(c) clearly applies to the Port Authority, despite Plaintiffs' contentions to the contrary.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration of this Court's March 13 Order denying Plaintiffs' motion for class certification (ECF No. 392) is **DENIED**. An appropriate form of Order accompanies this Opinion.

**DATED**: March 6, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge